**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WMTI PRODUCTIONS, INC.; WMTI PRODUCTIONS NORTH, INC.; and THE NEXT SEASON COMPANY; INC. | Case No.: CV 20-02726-CJC (MAAx) |
| Plaintiffs, | ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF PAUL JACKSON AND DENYING IN SUBSTANTIAL PART DEFENDANTS' MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF TYLER MASSEY [Dkt. 139; Dkt. 141; Dkt. 145] |
| v. | |
| KEVIN HEALEY; PROPAGATE CONTENT, LLC; and DOES 1 through 100, | |
| Defendants. | |

## I.    INTRODUCTION AND BACKGROUND

On March 24, 2020, Plaintiffs WMTI Productions, Inc., WMTI Productions North, Inc., and The Next Season Company, Inc., filed this copyright infringement action

against Defendants Kevin Healey, Propagate Content, LLC, and unnamed Does. (*See* Dkt. 1 [Complaint]; *see also* Dkt. 95 [Second Amended Complaint, hereinafter "SAC"].) Plaintiffs allege that certain episodes of Defendants' shows *Prank Encounters* and *Double Cross* infringe on certain episodes of Plaintiffs' show *Scare Tactics*. Specifically, Plaintiffs allege the following:

- *Prank Encounters* episode "Camp Scarecrow" infringes *Scare Tactics* episode "Camp Kill,"
- *Prank Encounters* episode "Face Fears" infringes *Scare Tactics* episode "My Heart Belongs to Misery,"
- *Prank Encounters* episode "End of the Road" infringes *Scare Tactics* episode "Road Kill,"
- *Prank Encounters* episode "Split Party" infringes *Scare Tactics* episode "Send in the Clowns,"
- *Prank Encounters* episode "Graveyard Shift" infringes on *Scare Tactics* episode "Bicentennialien," and
- *Double Cross* episode "Open House" infringes on *Scare Tactics* episode "Room with a View."

(*See* SAC ¶¶ 20–25.)

Now before the Court are Defendants' motion for summary judgment, motion to exclude the expert opinions and testimony of Paul Jackson, who seeks to opine on the similarity of the episodes at issue, and motion to exclude the expert opinions and testimony of Tyler Massey, a proposed damages expert. (*See* Dkt. 140 [Memorandum in Support of Defendants' Motion to Exclude Expert Opinions and Testimony of Paul Jackson, hereinafter "Jackson Mot."]; Dkt. 142 [Memorandum in Support of Defendants' Motion to Exclude Expert Opinions and Testimony of Tyler Massey, hereinafter "Massey

Mot."]; Dkt. 146 [Memorandum in Support of Defendants' Motion for Summary Judgment, hereinafter "MSJ"].)  For the following reasons, the former two motions are **DENIED**, and the latter is **DENIED IN SUBSTANTIAL PART**.[1]

## II.    LEGAL STANDARD

### A.    Summary Judgment

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 325.  A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law.  *Id.*  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 249.

When the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

---

[1]  Having read and considered the papers that the parties presented, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing scheduled for July 17, 2023, is hereby vacated and removed from the calendar.

In contrast, when the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex Corp.*, 477 U.S. at 325.  Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position.  Fed. R. Civ. P. 56(c)(1)(A)–(B).  The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  But the opposing party must show more than the "mere existence of a scintilla of evidence"; rather, "there must be evidence on which the jury could reasonably find for the [opposing party]."  *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor.  *Id.*; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).  The court does not make credibility determinations, nor does it weigh conflicting evidence.  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).  But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment.  *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

//

//

**B.** **Expert Testimony**

The district court has a "special obligation" to serve as a gatekeeper for expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). This is because "[u]nlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993) (citation omitted); *see also Cree v. Flores*, 157 F.3d 762, 773 (9th Cir. 1998) (noting that expert testimony is "not subject to the strictures of Federal Rules of Evidence 602 and 803").

Faced with a proffer of expert testimony, a district court must determine whether the expert is proposing to testify based on (1) specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. *See Daubert*, 509 U.S. at 592–93. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology properly can be applied to the facts at issue. *See id.* In other words, all admitted expert testimony must be both relevant and reliable. *See Kumho Tire*, 526 U.S. at 152; *see also* Fed. R. Evid. 702(a)–(d) (requiring that expert testimony "help the trier of fact to understand the evidence or determine a fact in issue," be "based on sufficient facts or data," be "the product of reliable principles and methods," and be the result of the expert's reliable application of "the principles and methods to the facts or data").

**III.** **DISCUSSION**

Defendants move for summary judgment on the grounds that there is no genuine dispute of material fact on liability or damages and move to exclude the opinions and testimony of Plaintiffs' liability and damages experts. The motion for summary

judgment and the motion to exclude with respect to the liability expert lack merit, and the motion to exclude with respect to the damages expert mostly does as well.

### A.    Summary Judgment on Liability

To state a claim for copyright infringement, Plaintiffs must show "(1) ownership of a valid copyright, and (2) copying constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). "Copying may be established by showing that the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).

"In determining whether two works are substantially similar, [courts] employ a two-part analysis: an objective extrinsic test and a subjective intrinsic test. For the purposes of summary judgment, only the extrinsic test is important because the subjective question whether works are intrinsically similar must be left to the jury." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). "The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria," *id.*, including "the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works," *Corbello v. Valli*, 974 F.3d 965, 975 (9th Cir. 2020). "Protectable expression includes the specific details of an author's rendering of ideas. . . . [The court] must take care to inquire only whether the *protectable elements, standing alone*, are substantially similar. In so doing, [the court] filter[s] out and disregard[s] the non-protectable elements." *Id.* (first and second alterations in original) (citation omitted). "Non-protectable elements include ideas; historical facts; common phrases; *scenes-a-faire* (that is, 'situations and incidents that flow necessarily or naturally from a basic plot premise' or generic plot line) and '[f]amiliar stock scenes and themes that are staples of literature.'" *Id.* (alteration in original) (citation omitted). "Summary

judgment is 'not highly favored' on questions of substantial similarity" and is warranted only if the court "can conclude that 'no reasonable juror could find substantial similarity of ideas and expression.'"  *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 774 (9th Cir. 2018) (citation omitted).

Here, reasonable minds could disagree on whether the episodes of Defendants' series are substantially similar to those of Plaintiffs' series under the extrinsic test. Indeed, the Court essentially concluded as much after reviewing the relevant episodes to rule on Defendants' motions to dismiss.  (*See* Dkt. 46 [Order Granting in Part Defendants' Motion to Dismiss and Motion to Strike] at 7, 17–18.; Dkt. 109 [Order Denying in Part and Granting in Part Defendants' Motion to Dismiss] at 6–10.)

Defendants now argue for summary judgment on the ground that "[o]nce filtered of their unprotectable elements, there is no substantial similarity in any of the accused episodes." (MSJ at 1.)  But filtering out unprotectable elements is not necessary to rule on the motion, as "original selection and arrangement of otherwise uncopyrightable components may be protectable." *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1445 (9th Cir. 1994).  "[A] combination of unprotectable elements is" protected when "those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003).  Plaintiffs have put forth some evidence to suggest that the combination of elements give rise to an original piece subject to copyright protection.  (*See, e.g.*, Dkt. 170 Ex. 29 [Expert Report of Paul Jackson, hereinafter "Jackson Report"] ¶ 11.C ["Plaintiffs' idea is developed and expressed concretely through a skillful use of dialogue, settings, machinations, characters, and actors that expand the concept into an original and fresh story."]; *see also id.* ¶¶ 12.C, 13.C, 14.C, 15.C, 16.D [similar].)

Defendants contend that "Plaintiffs never pleaded or disclosed a selection-and-arrangement theory, and they cannot assert it now for the first time more than three years into this case."  (MSJ at 28.)  But "[a] party does not need to plead specific legal theories in the complaint, as long as the opposing party receives notice as to what is at issue in the lawsuit."  *Corgan v. Keema*, 765 F. App'x 228, 229 (9th Cir. 2019) (citation omitted).  Defendants had adequate notice of what was at issue here, and in any event, Plaintiffs informed Defendants in not so many words that a selection-and-arrangement theory was at play.  The SAC repeatedly states that while certain "concept[s]" of Plaintiffs' works are "not new," their "idea[s] [are] developed and expressed concretely through [the] skillful use of dialogue, settings, machinations, characters, and actors that expand the concept[s] into . . . original and fresh stor[ies]."  (SAC Ex. 31 Schedule I at 3–4; *see also id.* Schedule II at 2; *id.* Schedule III at 2; *id.* Schedule IV at 2; *id.* Schedule V at 3; *id.* Schedule VII at 2.)  Plaintiffs need not have incanted any magic words, like "selection" or "arrangement"; these allegations suffice.

Defendants' reliance on *Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc), is unavailing.  In that case, the Ninth Circuit concluded that the district court did not err in omitting "a selection and arrangement instruction" to the jury because the plaintiff "did not present that as a separate theory at trial."  *Id.* at 1074.  The plaintiff's evidence focused on "five categories of similarities" that were simply "random similarities scattered throughout [the relevant portions of] the works," and the plaintiff failed to explain how the cited "combination of unprotectable elements" were "particularly selected and arranged" to "form a coherent pattern, synthesis, or design."  *Id.* at 1074–45 (first alteration in original) (citation omitted).  Here, by contrast, Plaintiffs present evidence that their "idea[s]" are "developed and expressed concretely through [the] skillful use of dialogue, settings, machinations, characters, and actors that expand . . . concept[s] into . . . original and fresh stor[ies]."  (*E.g.*, Jackson Report ¶ 11.C.)  They further illustrate "the specific details of

Plaintiffs' rendering of . . . original stor[ies], including . . . articulation[s] of the actual concrete elements" corresponding to objective criteria of similarity "and use of these elements in Defendants' copycat work[s]." (*Id.*)  It is thus untrue to say that Plaintiffs fail to explain how their cited elements were particularly arranged, and Plaintiffs have not "fail[ed] to properly invoke a selection and arrangement argument." *Id.* at 1076.

## B.    Summary Judgment on Damages

Defendants also argue for summary judgment because "[t]here is no evidence sufficient to create a genuine issue of triable fact as to Plaintiffs' entitlement to any of the[] categories of damages" that Plaintiffs seek.  (MSJ at 31.)  Defendants assert that those damages include "nine categories of lost opportunities to monetize *Scare Tactics* and resultant lost revenue,"[2] "lost *Scare Tactics* 'brand value,'" and "a portion of the production revenues earned by Defendants in connection with *Double Cross*."  (MSJ at 31 [citations omitted].)  According to Defendants, these "claimed damages are *not* damages to the value of the specific copyrights asserted in this case" but "to the *Scare Tactics* 'franchise' or 'format' at large, based on the existence of the *Prank Encounters* and *Double Cross* series."  (*Id.* at 32.)  Plaintiffs' "claims for infringement" are based on "copyright in discrete segments of six *Scare Tactics* episodes," and they do not assert "infringement of copyright in the *Scare Tactics* 'franchise' or 'format,' or any claim that the entirety of the *Prank Encounters* and *Double Cross* series are infringing."  (*Id.*)

---

[2]  Those categories are:

> production revenues relating to new ("reboot") episodes of *Scare Tactics* (Category 1); license fees for the broadcast of reboot episodes (Categories 2-5); "format" license fees for the creation of foreign adaptations of *Scare Tactics* (Category 6); license fees for the broadcast of foreign adaptation episodes (Category 7); and license fees for the broadcast of existing episodes of *Scare Tactics* on Netflix (Category 8) or on Pluto TV or another advertising-supported video on demand (AVOD) service (Category 9).

(MSJ at 31.)

"Thus, . . . [Plaintiffs'] claimed actual damages are not damages at all because they do not even *purport* to be 'as a result of the infringement.'  (*Id.* [quoting 17 U.S.C. § 504(b)].)

Defendants are wrong to suggest that damages to the value of the *Scare Tactics* series or format are beyond the ambit of the damages remedy for copyright violations. The Copyright Act permits a claimant "to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."  17 U.S.C. § 504(b).  "Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer."  *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) (citation omitted).  But *usually* does not mean *always*.  The statutory language is broad enough to encompass any harm that a plaintiff suffers from infringement, including harm to something other than the intrinsic value of the copyrighted work, so long as the harm is ascertainable and indeed caused by the infringement.  *Cf. id.* (noting that the requirement for "a causal link between the infringement and the monetary remedy . . . is akin to tort principles of causation and damages").

Buttressing this interpretation is that the statutory language on the profits remedy encompasses not just direct but also "indirect profits" to the extent that they are "ascertainable."  *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002) (citation omitted). Thus, a claimant can recover, for example, the profits that a hotel earns because it includes copyrighted songs in a show as well as the "profits from the hotel's casino[] that ha[ve] been boosted by the show's promotional value."  *Id.*  If the profits remedy includes indirect profits, it stands to reason that the damages remedy includes the harm from infringement to a plaintiff's sales of other products to the extent that the damages

are ascertainable.  *See* 5 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*
§ 14.02[A][3] (noting that "the value of the copyrighted work [sometimes] resides not in
its intrinsic value, but rather in its tendency to promote sales of other products").

Defendants also argue that "there is *still* no evidence from which a reasonable jury
could award the damages that Plaintiffs seek" because the evidence on which those
damages rest is based on "pure conjecture," namely, the "'assumption' that *Scare Tactics*
would have been rebooted—either by a streamer like Netflix or by a linear cable
channel—had *Prank Encounters* not existed." (MSJ at 32.)  Not true.  There is evidence
indicating that Netflix, which had previously licensed rights to stream existing episodes
of *Scare Tactics*, had good viewership of the series but nonetheless declined to exercise
its right to produce new episodes because its "programming needs in the category were
satisfied." (*E.g.*, Dkt. 170 Ex. 47 [Declaration of Declaration of Hayden Meyer in
Support of Plaintiffs' Opposition to Motion for Summary Judgment and Opposition to
Defendants' Motion to Exclude Expert Opinions and Testimony of Tyler Massey] ¶¶ 7–
12.)[3]  Netflix owned and aired *Prank Encounters* around the same time that it was
deciding whether to exercise its rights to produce further *Scare Tactics* episodes.  (*See
id.*)  A reasonable jury could conclude that Netflix's decision not to exercise its right was
because of *Prank Encounters*.  Further, a jury could conclude that the existence of *Prank
Encounters* stems from alleged infringement of *Scare Tactics* episodes, since half of the
episodes in season one of *Prank Encounters*, plus episodes in other seasons, are allegedly

---

[3]  Defendants' contention that the evidence consists of an email from a Netflix employee and is,
therefore, hearsay, (*see* Massey Mot. at 1), is of no consequence.  "[A]s long as a court finds that
hearsay evidence could be presented in an admissible form at trial . . . , it may consider the evidence
when ruling on the motion for summary judgment."  *Cherewick v. State Farm Fire & Cas.*, 578 F. Supp.
3d 1136, 1157 (S.D. Cal. 2022).  "Further, recognizing that a party opposing summary judgment seeks
only to show that a genuine issue of fact remains for trial rather than to prove that party's case, courts
have treated 'the opposing party's papers more indulgently than the moving party's papers.'"  *Id.*
(citation omitted).  Here, there are ways beyond the introduction of hearsay to corroborate the basis of
Netflix's decision, including, for example, calling a Netflix employee as a witness.

infringing.  Thus, because there is evidence supporting at least some of the claimed

damages, summary judgment on the absence of any provable damages is unwarranted.[4, 5]

## C.     Expert Opinions and Testimony of Paul Jackson

Defendants seek to exclude the expert opinions and testimony of Paul Jackson,

Plaintiffs' proposed expert witness on the similarities among the episodes of *Scare

Tactics* and those of Defendants' shows.  (*See* Jackson Mot.)  Defendants contend that

Jackson in his expert report "fails to apply the applicable test," the extrinsic test, because

he does not "filter[] out the non-expressive elements or components that are not

copyrightable" before analyzing the similarities between the copyrighted and allegedly

infringing work.  (*Id.* at 1–2.)  Defendants say that, as a result, Jackson's opinion is

"unreliable, unhelpful, and inadmissible."  (*Id.* at 2.)  The Court disagrees.

As noted above, Plaintiffs may pursue a selection-and-arrangement theory of

copyright infringement, which does not entail filtering out unprotected elements.  Further,

any failure to filter out unprotected elements does not render Jackson's opinion unreliable

or unhelpful to the factfinder.  An expert's opinion must "have a reliable basis in the

knowledge and experience of his discipline."  *Kumho Tire*, 526 U.S. at 148.  That is, "the

reasoning or methodology underlying the testimony" must be valid and must be able to

be "properly . . . applied to the facts in issue."  *Daubert*, 509 U.S. at 592–93.  Jackson

seeks to compare elements of copyrighted episodes and the combination thereof to those

of allegedly infringing episodes, which is a valid methodology that can naturally be

applied to the facts in this case.  Which elements matter is a factual issue dependent on

---

[4]  The Court need not, and therefore does not, rule on the availability of other damages or Defendants'
profits, which Defendants also discuss in their motion.
[5]  The Court's conclusion in this Order regarding Plaintiffs' theory of damages is solely for the purposes
of ruling on Defendants' motion for summary judgment.  Defendants are free to raise these issues later
in a motion in limine to the extent that they deem doing so necessary and appropriate.

the *scenes-a-faire* or generic or stock elements of the relevant genre and, for that reason, for the jury to consider.  Jackson can present his analysis of similarities, and Defendants are free to present their own evidence contradicting Jackson's opinion or evidence that the elements that Jackson analyzes include *scenes-a-faire* or generic or stock features. Defendants are also welcome to cross examine Jackson on these issues and argue to the factfinder that his opinion should be given little weight.  But excluding his testimony wholesale is not warranted.

### D.    Expert Opinions and Testimony of Tyler Massey

Defendants next seek to exclude the expert opinions and testimony of Tyler Massey, Plaintiffs' proffered damages expert.  (*See* Massey Mot.)  Defendants assert that "Massey's damages calculations have no relation to Plaintiffs' infringement allegations" because he "did not assess economic harm resulting from infringement of the six copyrighted segments of" *Scare Tactics*" but rather "analyzed damages resulting from infringement of the 'format' of" the series.  (*Id.* at 1.)  Defendants also assert that "Massey's damages testimony is inherently unreliable because it is based on layers upon layers of speculation," including the "assumption that the show *Scare Tactics* would have been rebooted had Defendants' show, *Prank Encounters*, not existed."  (*Id.*)  Defendants made essentially the same arguments in their motion for summary judgment, which, as explained above, the Court rejects.

Defendants also argue that Massey's opinion involves "guessing at how many seasons this theoretical reboot would last, how much it would command in licensing fees, the ownership terms under which outlets would agree to produce the reboot series, and other crucial details."  (*Id.*)  Again, these are not grounds to exclude Massey's testimony. Defendants do not challenge Massey's qualifications, and Massey is allowed to make informed assumptions to the extent that they are reasonable and based on the evidence

presented at trial and his decades of experience in the film and television industry.  Any challenge to the validity of such assumptions goes to the weight to be given to, not the admissibility of, Massey's opinion.  *See, e.g.*, *Udd v. City of Phoenix*, No. CV-18-01616-PHX, 2020 WL 1536326, at *34 (D. Ariz. Mar. 31, 2020) ("Disagreement with an expert's assumptions does not, in general, provide a basis for excluding the expert's testimony."  (collecting cases)); *MedImpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, No. 19cv1865, 2022 WL 5460971, at *5 (S.D. Cal. Oct. 7, 2022) ("[I]mproper assumptions are not bases to exclude expert testimony as they concern the weight of the testimony, not admissibility and may be challenged on cross-examination.").  Indeed, assumptions are necessary in virtually every damages calculation, because the occurrence of copyright infringement necessarily robs us of knowing with certainty the specifics of the counterfactual world where no infringement happens.

Defendants then seek to bar Massey from "offer[ing] his opinion . . . that the works accused of infringement are substantially similar to the asserted copyrighted works," on which he "has no special proficiency" to opine.  (*Id.* at 2.)  The Court agrees.  To the extent that Massey seeks to offer an opinion regarding damages predicated on the assumption that the copyrighted work and allegedly infringing work are substantially similar, such testimony is permissible, but Massey will not be allowed to offer his own opinion on whether such similarity in fact exists.

Finally, Defendants seek to exclude the portion of Massey's calculations regarding "a category of damages relating to infringement of a work—an earlier show called *Joke's On You*—completely unrelated to the six copyrighted works asserted by Plaintiffs in this case."  (Massey Mot. at 2.)  The revenues that Massey discusses appear to arise pursuant to a settlement agreement between Defendant Healey and Scott W. Hallock, one of the joint creators of *Scare Tactics* and formerly a plaintiff in this suit.  (*See* Dkt. 142-3 [Expert Report of Tyler Massey] ¶¶ 55–58.)  But Plaintiffs have not brought a breach of

contract claim in this case, only infringement.  Plaintiffs in their opposition brief say little more than "Massey properly calculates the[] damages" from the purported infringement of the copyright on Plaintiffs' episode "'Room with a View' . . . outside the context of the damages due to Netflix' [sic] broadcasting of Prank Encounters [sic]."  (Dkt. 170 [Plaintiffs' Opposition to Defendants Kevin Healey and Propagate Content, LLC's Daubert (sic) Motion Re Plaintiffs' Expert Tyler Massey] at 9.)  The Court cannot make heads or tails of this category of damages, and it cannot see how this category allegedly stem from any copyright infringement.  Thus, this portion of the damages calculation is excluded.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment and motion to exclude the expert opinions and testimony of Paul Jackson are **DENIED**, and their motion to exclude the expert opinions and testimony of Tyler Massey is **DENIED IN SUBSTANTIAL PART**.


DATED:    July 13, 2023

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE